NO. 07-07-0154-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MARCH 6, 2008

_____

BENJAMIN HUDSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 121ST DISTRICT COURT OF TERRY COUNTY;

NO. 5635; HONORABLE KELLY G. MOORE, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Following a plea of guilty, Appellant, Benjamin Hudson, was convicted of possession

of methamphetamine. Punishment was assessed at eighteen months confinement in a

state jail facility, suspended in favor of five years community supervision, and a $750 fine.

By a sole issue, Appellant questions whether the trial court erred in denying his motion to

suppress evidence seized in violation of his constitutional rights under the Fourth Amendment of the United States Constitution and Article I, § 9 of the Texas Constitution and in violation of article 38.23 of the Texas Code of Criminal Procedure.[1] We affirm.

## Factual Background

The only witness to testify at the suppression hearing was Officer Gabriel Carrillo. According to Carrillo, he was on patrol in full uniform on October 7, 2006, when he observed Appellant walking across a field from a residential neighborhood at approximately 3:50 a.m. As Appellant neared the curb, Carrillo activated his patrol car lights and called to him. When asked for identification, Appellant produced a social security card and a plastic movie card. He also provided his name and date of birth. According to Carrillo, Appellant's eyes were glassy, and he was nervous and shaky. Carrillo questioned him about the use of controlled substances, specifically, about smoking methamphetamine. Carrillo placed Appellant in front of his patrol car and began a pat down search. He "crushed" the outside of Appellant's pockets and felt a box-like item which Appellant claimed were cigarettes. As requested by Carrillo, Appellant removed the item and placed it on the hood of the patrol car. The officer still noticed a bulge on the side of Appellant's

---

[1]Although Appellant's issue and his Summary of Argument reference article 38.23 of the Texas Code of Criminal Procedure, no argument is presented based on that authority. Thus, we do not analyze the merits of his issue as it pertains to article 38.23. *See* Tex. R. App. P. 38.1(h). *See also Cardenas v. State*, 30 S.W.3d 384, 393 (Tex.Crim.App. 2000).

2

pocket and asked him if he had "anything illegal on him." Appellant removed a baggie of marihuana from his pocket and placed it on the hood of the patrol car. At that point, Carrillo placed Appellant under arrest for possession of marihuana. Following Appellant's arrest, Carrillo conducted a warrant check to confirm his identity and he discovered a criminal trespass warrant issued for Appellant.

Appellant was taken to the police department for booking. During a search incident to arrest, the officer reached into Appellant's pocket and found a small plastic baggie containing methamphetamine and some cash. Eventually, Appellant was charged with possession of methamphetamine, not marihuana.

Appellant filed a motion to suppress illegally seized evidence. Following a hearing, the trial court denied the motion, and Appellant plead guilty and was convicted of possession of methamphetamine. By a sole issue, he challenges the trial court's order denying his motion to suppress.

**Standard of Review--Motion to Suppress**

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). In reviewing a trial court's determination of the reasonableness of either a temporary investigative detention or an arrest, appellate courts use a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). Almost total deference is given to a trial court's

3

determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *St. George v. State*, 237 S.W.3d 720, 725 (Tex.Crim.App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). Appellate courts also afford the same level of deference to a trial court's ruling on application of law to fact questions or mixed questions of law and fact if the resolution of those questions turns on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex.Crim.App. 2006). However, for mixed questions of law and fact which do not fall within this category, appellate courts may conduct a de novo review of the trial court's ruling. *Amador*, 221 S.W.3d at 673. Appellate courts do not engage in their own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990).

When, as here, no findings of fact were requested nor filed,[2] we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *See State v. Ross*, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000). If the trial court's decision is correct on any theory of law applicable to the case, it will be sustained. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex.Crim.App. 2003); *Ross*, 32 S.W.3d at 855-56. At a suppression hearing, the trial court is the sole and

---

[2]*See State v. Cullen*, 195 S.W.3d 696, 699 (Tex.Crim.App. 2006) (holding that upon the request of the losing party on a motion to suppress evidence, the trial court shall state its essential findings. If the losing party fails to request findings of fact, and the trial court does not enter any of its own accord, the losing party can still appeal any adverse ruling and *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000), will continue to control how the trial court's ruling is reviewed).

exclusive trier of fact and judge of the credibility of witnesses and the weight to be given their testimony. *Id*. at 855. Additionally, the legal question of whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion is reviewed de novo. *See Madden v. State*, 242 S.W.2d 504, 517 (Tex.Crim.App. 2007).

## Encounter versus Detention

The State urges that because Appellant willingly answered Carrillo's questions and cooperated when asked to remove items from his pocket, their interaction was a mere encounter, not requiring reasonable suspicion of criminal activity.[3] We disagree. The Texas Court of Criminal Appeals has recognized three distinct categories of interactions between police officers and citizens: encounters, investigative detentions, and arrests.[4] *State v. Perez*, 85 S.W.3d 817, 819 (Tex.Crim.App. 2002).

An encounter is a consensual question and answer interaction between a citizen and a police officer, in a public place, that does not require reasonable suspicion and does not implicate constitutional rights. *See Florida v. Royer,* 460 U.S. 491, 497-98, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *State v. Perez,* 85 S.W.3d at 819. An investigative detention occurs when an individual is encountered by a police officer, yields to the officer's display

---

[3]Interestingly, the State argued at the suppression hearing that the interaction between Appellant and Carrillo was a lawful detention; however, on appeal, the State argues the interaction was an encounter.

[4]The third category, arrests, is not relevant to this appeal.

of authority, and is temporarily detained for purposes of an investigation. *Johnson v. State,* 912 S.W.2d, 227, 235 (Tex.Crim.App. 1989). A person "yields to an officer's display of authority" when a reasonable person would not feel free to continue walking or otherwise terminate the encounter. *Florida v. Bostick*, 501 U.S. 429, 436, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *State v. Velasquez*, 994 S.W.2d 676, 679 (Tex.Crim.App. 1999); *Johnson v. State*, 912 S.W.2d at 234-35. An investigative detention is constitutionally permissible if, under the totality of the circumstances, the officer has reasonable suspicion supported by articulable facts that the person detained is, has been, or soon will be engaged in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Ford v. State,* 158 S.W.3d 488, 492 (Tex.Crim.App. 2005). Whether reasonable suspicion exists is determined by considering the facts known to the officer at the moment of detention. *Davis v. State,* 947 S.W.2d 240, 243 (Tex.Crim.App. 1997).

Activation of overhead lights on a police vehicle does not necessarily make an encounter non-consensual. *See Franks v. State,* 241 S.W.3d 135 (Tex.App.–Austin 2007, no pet. h.). However, when a person stops in response to a patrol car's emergency lights rather than of his own accord, an investigatory detention has occurred and reasonable suspicion is required. In *Garza v. State*, 771 S.W.2d 549 (Tex.Crim.App. 1989), in response to an officer turning on his patrol car flashing lights, the defendant stopped his vehicle at an auto parts store. The officer testified that when he observed the defendant's car, he believed the driver resembled a mug shot and contacted other officers by radio that he was about to stop the individual. *Id.* at 552. The State argued there was no stop or

seizure because the defendant voluntarily stopped his car at the auto parts store pursuant to a predetermined plan. *Id*. at 556. The Court suggested, "it cannot be seriously maintained that a reasonable person under the circumstances would have believed that he was free to leave." *Id*. at 557. *See also Hernandez v. State*, 963 S.W.2d 921, 924 (Tex.App.–San Antonio 1998, pet. ref'd) (activating emergency lights would cause a reasonable person to believe he is not free to leave). *But see Franks v. State*, 241 S.W.3d at 142 (activation of patrol car's overhead lights in an area that appeared dark and unoccupied except for a single car does not necessarily constitute a detention); *Martin v. State*, 104 S.W.3d 298, 301 (Tex.App.–El Paso 2003, no pet.) (citing a New Mexico Court of Appeals case holding that an officer's use of overhead lights alone does not necessarily cause an encounter to be a stop).

A distinction in the underlying case is that Appellant was not stopped while in a vehicle. Rather, he was on foot. Nevertheless, a pedestrian is entitled to the protection of the Fourth Amendment as he walks down the street. *See Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Tanner v. State*, 228 S.W.3d 852 (Tex.App.–Austin 2007, no pet.), a police officer observed the defendant and a female companion walking from behind a bar at 3:00 a.m. and flashed his patrol car lights and signaled for them to stop. The female stopped, but the defendant continued to walk. *Id.* at 854. The officer drove towards the defendant, who then stopped. The officer searched the defendant and found methamphetamine. *Id.* at 855. Citing *Garza*, 771 S.W.2d at 558, the court found, "[t]here is no question that an investigative detention occurred when [the

defendant] stopped walking in response to [the officer's] demand." *Tanner*, 228 S.W.3d at 856 n.3.

Officer Carrillo testified that he observed Appellant walking across a field and that as Appellant approached the curb, he activated his patrol car lights and called out to him. Appellant approached Carrillo and complied with his requests, including removing items from his pocket, which included marihuana. On cross-examination, Carrillo answered affirmatively when asked whether activation of his patrol car lights is a communication to a person to stop. He also testified on cross-examination that had Appellant fled from him after activating his lights, he might have possibly charged him with evading. No evidence was presented that Carrillo believed Appellant was in distress, that the area was dark, or that safety reasons existed for activating the patrol car lights. Under these facts, we conclude that activation of the patrol car lights caused Appellant to yield to Officer Carrillo's show of authority. We further conclude that Appellant did not feel free to leave or decline Carrillo's requests. Thus, we find that a detention occurred requiring reasonable suspicion by Carrillo to stop Appellant.

**Reasonable Suspicion**

The Fourth Amendment of the United States Constitution and Article I, § 9 of the Texas Constitution protect against unreasonable searches and seizures by government officials. *See Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex.Crim.App. 2007); *Johnson v. State*, 912 S.W.2d 232-34; *Martinez v. State*, 72 S.W.3d 76, 81 (Tex.App.–Amarillo 2002,

8

no pet.).  The reasonableness of an investigative detention is determined by a dual inquiry: (1) whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place.  *Terry*, 392 U.S. at 19-20.

An investigative detention requires an officer to have reasonable suspicion founded upon articulable facts that when combined with rational inferences from those facts, would lead him to reasonably suspect that criminal activity is afoot and that the detainee is connected to the activity.  *Id.* at 21;  *Balentine*, 71 S.W.3d at 768.  These facts must amount to more than a mere inarticulable hunch or suspicion.  *Williams v. State*, 621 S.W.2d 609, 612 (Tex.Crim.App. 1981).  Reasonableness of a search is a question of law that is reviewed de novo and is evaluated by the totality of the circumstances.  *Kothe v. State*, 152 S.W.3d 54, 62 (Tex.Crim.App. 2004);  *Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App. 1997).

Officer Carrillo testified that he questioned Appellant because he was walking late at night and because there had been recent criminal mischief and burglaries in the vicinity. According to Carrillo, he was conducting "effective patrol" by stopping persons for walking during the hours of 12:30 a.m. and daylight.  On cross-examination, however, he testified that the "recent" crime in the area had actually occurred some three months earlier and consisted of a brick being thrown through the back window of a pickup.  He could not recall the type of burglary that occurred.

9

Carrillo testified that no criminal activity had been reported during his shift on the night he stopped Appellant. Additionally, when he observed Appellant walking across the field, he did not see him with a brick in his hand nor did he see him carrying any items common to burglaries. It was not until after Carrillo made contact with Appellant that he observed glassy eyes and shakiness which lead him to believe that Appellant might be under the influence of alcohol or narcotics.

Although time of day[5] and the level of criminal activity in an area may be factors to consider in determining reasonable suspicion, they are not suspicious in and of themselves. *See Klare v. State*, 76 S.W.3d 68, 73-76 (Tex.App.–Houston [14th Dist.] 2002, pet. ref'd). *See also Scott v. State*, 549 S.W.2d 170, 172-73 (Tex.Crim.App. 1976). Time of day and criminal activity in the area are facts which focus on the suspects surroundings, and not on the suspect himself. *Klare*, 76 S.W.3d at 75. Thus, an assessment of the surroundings must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. *Id.* at 75, citing *U.S. v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Officer Carrillo did not offer any testimony to raise suspicion that Appellant was engaged in criminal activity prior to initiating contact with him. Additionally, there are no independent indicia of reasonable suspicion in the record before us. Under the totality of the circumstances, we find that the factors cited by Carrillo, i.e., time of day and "recent" crime in the area, were a mere pretext for stopping Appellant.

---

[5]Nighttime activity per se is not sufficient to create suspicion of criminal activity. *See Brown v. Texas*, 443 U.S. 47, 53, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

Although we find that Appellant was illegally detained in violation of his constitutional rights, we nevertheless agree with the State that the methamphetamine was admissible because it was discovered subsequent to Officer Carrillo's discovery of an outstanding warrant for criminal trespass. Under the attenuation doctrine, evidence may be admitted if the connection between the initial illegality and the means through which the evidence was secured is so attenuated as to dissipate the taint. *See Welcome v. State*, 865 S.W.2d 128, 133 (Tex.App.–Dallas 1993, pet. ref'd); *Reed v. State*, 809 S.W.2d 940, 944-45 (Tex.App.–Dallas 1991, no pet.). The discovery of an outstanding warrant during an illegal detention may break the connection between the primary taint and subsequently discovered evidence. *See Johnson v. State*, 496 S.W.2d 72, 74 (Tex.Crim.App. 1973). *See also Fletcher v. State*, 90 S.W.3d 419, 420-21 (Tex.App.–Amarillo 2002, no pet.).

Officer Carrillo testified that he believed he ran a criminal history check after Appellant had already been arrested. He also testified that in his effort to identify Appellant, he discovered the warrant, and Appellant was "going to go to jail" for the warrant. The methamphetamine was not discovered until Appellant was searched incident to his arrest at the police department. The record supports admissibility of the methamphetamine as it was discovered subsequent to the outstanding warrant. The marihuana, however, would not have been admissible because it was discovered during an illegal detention and prior to discovery of the criminal trespass warrant. Appellant's sole issue is overruled.

11

## Conclusion

We find that Officer Carrillo illegally detained Appellant without reasonable suspicion. Regardless, we conclude that discovery of the criminal trespass warrant for Appellant prior to discovery of the methamphetamine provided sufficient attenuation so as to render the methamphetamine admissible. Accordingly, the trial court did not abuse its discretion in denying Appellant's motion to suppress evidence. Consequently, the trial court's judgment is affirmed.


Patrick A. Pirtle
Justice


Publish.