NO. 07-08-0224-CR
Â 
IN THE COURT OF APPEALS
Â 
FOR THE SEVENTH DISTRICT OF TEXAS
Â 
AT AMARILLO
Â 
PANEL C 
Â 
JULY 31, 2009
Â 
______________________________
Â 
Â 
SHELDON KEITH CRAIN, APPELLANT
Â 
V.
Â 
THE STATE OF TEXAS, APPELLEE
Â 
_________________________________
Â 
FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;
Â 
NO. 54,073-A; HONORABLE HAL MINER, JUDGE
Â 
_______________________________
Â 
Â 
Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
Â 
Â 
OPINION
Â 
Â 
Â Â Â Â Â Â Â Â Â Â Â Appellant, Sheldon Keith Crain, was charged by indictment with the offense of
unlawful possession of a firearm by a felon, enhanced.


 Pursuant to a plea bargain,
Appellant entered a plea of guilty and was assessed a sentence of six years confinement
and a fine of $1,000. The trial court certified Appellantâs right to appeal matters raised by
written motion filed and ruled on before trial. See Tex. R. App. P. 25.2(a)(2)(A). Appellant
now raises a single issue: whether the trial court erred by denying his motion to suppress
evidence obtained after he was illegally detained. We affirm.
Background
Â Â Â Â Â Â Â Â Â Â Â On Appellantâs motion, the trial court held a suppression hearing and the following
evidence was adduced. On July 23, 2006, Officer Dewayne Griffin, Amarillo Police
Department, was responding to a theft call when he spotted Appellant walking in the
roadway of a residential area at 12:30 a.m. When Appellant saw Officer Griffinâs patrol car,
he grabbed at his waistband. Officer Griffin noted Appellantâs presence and decided to
return to speak with him after responding to the theft call due to the number of burglaries
committed after midnight in the area where Appellant was spotted. 
Â Â Â Â Â Â Â Â Â Â Â Â After responding to the call, Officer Griffin returned. Officer Cody Moore, who also
responded to the theft call as back-up, agreed to assist. Officer Griffin located Appellant
walking across a yard. He turned his spotlight on Appellant and asked him to come over to
his patrol car and talk to him. Appellant continued walking several stepsâthen turned
towards him. Officer Griffin exited his car and walked over to Appellant. Appellant appeared
nervous and asked Officer Griffin if he was doing anything wrong. Officer Griffin responded
he just wanted to speak with him. As they were talking, Officer Griffin noticed a strong odor
of marihuana emanating from Appellantâs person and breath. 
Â Â Â Â Â Â Â Â Â Â Â After smelling the marihuana, Officer Griffin decided to detain Appellant for further
investigation. He asked Appellant to put his hands behind his back and accompany him to
his patrol car. As he approached the patrol car, Officer Moore arrived. Officer Griffin placed
Appellant against the patrol car while he patted down Appellantâs right side. When Officer
Moore patted down Appellantâs left side, he noticed a bulge beneath his shirt and, after
pushing against the bulge, determined Appellant was carrying a handgun. He pulled up
Appellantâs shirt and disarmed him. Officer Griffin placed Appellant under arrest. 
Â Â Â Â Â Â Â Â Â Â Â JoAnn Marez testified she lived at the address where Officer Griffin first turned his
spotlight on Appellant. She further testified Appellant was an acquaintance whom she
expected to visit her that night. When Officer Griffin first called out to Appellant from his
patrol car, she testified Appellant was four or five feet from her unlocked door. She also
testified Officer Griffin ordered or commanded Appellant to âstopâ and ânot to run.â In
rebuttal, Officer Griffin denied giving these commands. He testified that, until he smelled the
marihuana, Appellant was free to leave. At the hearingâs conclusion, the trial court denied
Appellantâs motion finding Officer Griffinâs testimony was âvery credible.â 
Â Â Â Â Â Â Â Â Â Â Â Standard of Review
Â Â Â Â Â Â Â Â Â Â Â A trial courtâs ruling on a motion to suppress is reviewed for abuse of discretion, 
Balentine v. State, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002), under a bifurcated standard. 
Amador v. State, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). When a trial courtâs fact findings
are based on an evaluation of witness credibility or demeanor, almost total deference is given
to its factual determinations supported by the record. St. George v. State, 237 S.W.3d 720, 725
(Tex.Crim.App. 2007). On questions of mixed law and fact that do not turn on the trial courtâs
evaluation of witness credibility and demeanor, however, we conduct a de novo review. 
Amador, 221 S.W.3d at 673. 
Â Â Â Â Â Â Â Â Â Â Â When, as here, no findings of fact were requested nor filed, we view the evidence in the
light most favorable to the trial courtâs ruling and assume the trial court made implicit findings
of fact supported by the record. See Carmouche v. State, 10 S.W.3d 323, 327-28
(Tex.Crim.App. 2000). If the trial courtâs decision is correct on any theory of law applicable to
the case, it will be sustained. Armendariz v. State, 123 S.W.3d 401, 404 (Tex.Crim.App. 2003),
cert. denied, 541 U.S. 974, 124 S.Ct. 1883, 158 L.Ed.2d 469 (2004). 
Â Â Â Â Â Â Â Â Â Â Â Encounter vs. Detention
Â Â Â Â Â Â Â Â Â Â Â Appellant contends that he was unlawfully detained when Officer Griffin shined his
spotlight on him and commanded him to âstopâ or ânot to run.â The State contends that
Officer Griffinâs initial contact with Appellant was an encounter that evolved into a temporary
investigative detention after Officer Griffin detected an odor of marihuana emanating from
Appellant. 
Â Â Â Â Â Â Â Â Â Â Â There are three distinct categories of interactions between police officers and citizens:
encounters, investigative detentions, and arrests. State v. Perez, 85 S.W.3d 817, 819
(Tex.Crim.App. 2002). Encounters occur when police officers approach an individual in
public to ask questions, and do not require any justification whatsoever on the part of the
officer. Harper v. State, 217 S.W.3d 672, 674 (Tex.App.âAmarillo 2007, no pet.). Moreover,
police officers do not violate the Fourth Amendment by merely approaching an individual in
a public place, by asking him if he is willing to answer some questions, by putting questions
to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his
voluntary answers to such questions. Perez, 85 S.W.3d at 819.
Â Â Â Â Â Â Â Â Â Â Â Â A stop is deemed an investigative detention when a police officer detains a person
reasonably suspected of criminal activity to determine his identity or to momentarily maintain
the status quo while seeking additional information. Hoag v. State, 728 S.W.2d 375, 380
(Tex.Crim.App. 1987). In making a determination whether an encounter or detention
occurred, we consider all of the circumstances surrounding the incident to determine
âwhether the police conduct would have communicated to a reasonable person that the
person was not free to decline the officersâ requests or otherwise terminate the encounter.â
State v. Garcia-Cantu, 253 S.W.3d 236, 242 (Tex.Crim.App. 2008). Each case must be
evaluated on its own terms. âThe test is necessarily imprecise, because it is designed to
access the coercive effect of police conduct, taken as a whole, rather than to focus on
particular details of that conduct in isolation. Moreover, what constitutes a restraint of liberty
prompting a person to conclude that he is not free to âleaveâ will vary, not only with the
particular police conduct at issue, but also with the setting in which the conduct occurs.â 
Michigan v. Chesternut, 486 U.S.567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). âIt is
the display of official authority and the implication that this authority cannot be ignored,
avoided, or terminated, that results in a Fourth Amendment seizure.â Garcia-Cantu, 253
S.W.3d at 243.
Â Â Â Â Â Â Â Â Â Â Â The facts of this case are quite similar to those of Stewart v. State, 603 S.W.2d 861
(Tex.Crim.App. 1980). In Stewart, two officers observed a van parked at the end of a dead
end street in front of a house under construction. 603 S.W.2d at 862. They shined their
spotlights into the van and saw four persons inside. When the driver exited the van, the
officers smelled the odor of burning marihuana. The officers subsequently found marihuana
in a knapsack placed underneath the van by its passengers. The Court of Criminal Appeals
held that â[t]he police exercised no authority until after they had smelled the odor of burning
marihuana.â Id. 
Â Â Â Â Â Â Â Â Â Â Â Similarly, here, Officer Griffin did not engage in any show of authority until after he
smelled marihuana on Appellant. Like the officers in Stewart, he used his spotlight to better
view Appellant and the surrounding area in the dark. He first requested that Appellant come
over to his patrol car and, when Appellant did not, Officer Griffin exited his car and walked
over to Appellant. Appellant asked if he was doing anything wrong and Officer Griffin
responded that he just wanted to speak with him. From the record, we cannot determine the
tone or demeanor of the officerâs statement and we must, therefore, give great deference to
the trial judgeâs assessment as to whether the exchange was more akin to a command or
a request.
Â Â Â Â Â Â Â Â Â Â Â After Officer Griffin smelled the marihuana on Appellantâs person, he asked Appellant
to place his hands behind his back and led him to the patrol car. Thus, prior to smelling the
marihuana and detaining Appellant, Officer Griffin had simply illuminated Appellant and the
surrounding area to more clearly see in the dark and then approached Appellant to ask him
some questions. Under these circumstances, we find that Officer Griffinâs conduct would not
communicate to a reasonable person that he or she was not free to decline Officer Griffinâs
requests or otherwise terminate the encounter. 
Â Â Â Â Â Â Â Â Â Â Â That Officer Griffin activated his spotlight did not necessarily make the encounter non-consensual. Garcia-Cantu, 253 S.W.3d at 245 n.43. See Hudson v. State, 247 S.W.3d 780,
785 (Tex.App.âAmarillo 2008, no pet.). Here, the spotlight was a matter of practical
necessity due to the time of night. Moreover, Appellant did not stop when the spotlight was
shined in his direction but looked back and continued walking before finally stopping and
facing Officer Griffin. Appellant was a pedestrian with open access to the entire yard and
stopped of his own volition. 
Â Â Â Â Â Â Â Â Â Â Â Appellant relies on Hudson, supra, to assert that Officer Griffinâs initial interaction was
to detain him. In that case, Hudson was observed by Officer Carrillo walking across a field
in a residential area. 247 S.W.3d at 783. As he neared the curb, Officer Carrillo activated
his patrol car emergency lights and called to him. When he was asked for identification,
Hudsonâs eyes were glassy and he appeared nervous, shaky. After questioning Hudson
about the use of controlled substances, Officer Carrillo placed him in front of his patrol car
and began a pat down search when he discovered a bulge in Hudsonâs pocket which turned
out to be a bag of marihuana. Id. This Court determined that, under the circumstances,
Officer Carrilloâs stop of Hudson was not an encounter but a detention because Hudson
stopped in response to the activation of the emergency lights rather than of his own accord
and there was no evidence the lights were activated for safety reasons or due to darkness. 
247 S.W.3d at 785-86. Further, Officer Carrillo testified that he activated his overhead lights
as a signal to stop and would have possibly charged the pedestrian with evasion had he fled. 
Id. Here, there is evidence Appellant continued walking after Officer Griffin activated the
spotlight and requested that he come over to the patrol car. Further, Officer Griffin testified
he activated the spotlight to see more clearly in the dark and Appellant was free to stop or
not.


 
Â Â Â Â Â Â Â Â Â Â Â Finally, based upon Marezâs testimony, Appellant contends Officer Griffin 
commanded or ordered him to âstopâ or ânot to runâ in conjunction with shining the spotlight. 
Officer Griffin, however, testified that, after he located Appellant, he did not order or
command Appellant to take any action but asked him only to come over to his car or speak
with him. To resolve this conflicting testimony, we defer to the trial courtâs express
determination that Officer Griffinâs testimony was âvery credible.â See Garcia-Cantu, 253
S.W.3d at 249. The trial court is the sole judge of witnessesâ credibility; Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997), and may accept or reject any or all of the
witnessesâ testimony. Johnson v. State, 803 S.W.2d 272, 287 (Tex. Crim. App. 1990). See
also GarciaâCantu, 253 S.W.3d at 241. Appellantâs sole issue is overruled.
Â 
Conclusion
Â Â Â Â Â Â Â Â Â Â Â The trial courtâs judgment is affirmed.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Patrick A. Pirtle 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice 

Â Â Â Â Â 

Â 
Quinn, C.J., dissenting.

Â 
Â 
Publish. 

Â 

Â 

Â 




 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
a:link, span.MsoHyperlink
 {mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-parent:"";
 color:blue;
 text-decoration:underline;
 text-underline:single;}
a:visited, span.MsoHyperlinkFollowed
 {mso-style-noshow:yes;
 mso-style-priority:99;
 color:purple;
 mso-themecolor:followedhyperlink;
 text-decoration:underline;
 text-underline:single;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.term1
 {mso-style-name:term1;
 mso-style-unhide:no;
 font-weight:bold;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-09-0275.CR%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-09-0275.CR%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-09-0275.CR%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-09-0275.CR%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-footer:url("07-09-0275.CR%20opinion_files/header.htm") f2;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
@page WordSection3
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-footer:url("07-09-0275.CR%20opinion_files/header.htm") f2;
 mso-paper-source:0;}
div.WordSection3
 {page:WordSection3;}
@page WordSection4
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-footer:url("07-09-0275.CR%20opinion_files/header.htm") f4;
 mso-paper-source:0;}
div.WordSection4
 {page:WordSection4;}
-->








NO. 07-09-00275-CR

Â 

IN THE COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL B

Â 



FEBRUARY
7, 2011

Â 



Â 

RODNEY W. WOOTEN, APPELLANT

Â 

v.

Â 

THE STATE OF TEXAS, APPELLEE 



Â 



Â 

 FROM THE COUNTY COURT AT LAW NO. 2
OF LUBBOCK COUNTY;

Â 

NO. 2008-451,360; HONORABLE DRUE FARMER, JUDGE



Â 



Â 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

Â 

Â 

MEMORANDUM OPINION

Â 

Appellant Rodney W. Wooten appeals
from his conviction by jury of the misdemeanor offense of domestic violence
assault[1]
and the resulting sentence of fifteen days of imprisonment in the county jail
and a fine of $3,000.Â  Through three
issues, appellant contends the State failed to disclose evidence in violation
of Brady v. Maryland, the trial court erred in refusing to include in
the court=s charge an instruction of consent as
a defense to assault, and the evidence was factually insufficient to support
his conviction.Â  We affirm.

Background

Â Â Â Â Â Â Â Â Â Â Â  The
victim of appellantÂs assault was his wife, Wendi. She testified at trial, along
with the 911 operator, the responding officer, and a WomenÂs Protective
Services advocate.Â  Appellant presented
the testimony of his son.Â  The evidence
indicated police were called to the coupleÂs Lubbock apartment in response to a
domestic disturbance. Â Wendi told the
responding officer that she and her husband argued over a MySpace account and
he slammed the bedroom door on her leg and threw her against the wall.Â  She attempted to call 911 at that time but
her husband took the phones away from her.Â 
She called 911 from a neighborÂs apartment. The officer described Wendi
as crying, scared, and in pain.Â  He
observed she had a bruise on the inner side of her leg.Â  








Wendi went to her doctor the next
day.Â  She had small bruises on her knee
and her arm.Â  The doctor prescribed a
painkiller and anti-inflammatory medication.Â 
She returned to the doctor a day later because she was not feeling well.


When the responding officer spoke
with appellant on the phone, appellant told the officer he did not assault
Wendi. The officer told appellant to stay somewhere else that night or he would
be arrested.Â  Appellant did not testify
at trial.








Analysis

Brady Violation

In his first issue, appellant argues
the State failed to disclose favorable evidence in violation of Brady v. Maryland.[2]Â  The evidence of which appellant complains is
a report regarding a prior incident of abuse committed against Wendi.Â  Appellant argued the report showed that
instance of violence was mutual combat between Wendi and appellant. The State
contends this issue was not preserved for appellate review.Â  At oral argument, appellant conceded the
State is correct.Â  After a review of the
record, we agree and overrule appellant=s first issue.


Jury Instruction

In appellant=s second issue, he contends the trial
court erred in failing to include a defensive instruction on consent pursuant
to section 22.06 of the Penal Code.Â  See
Tex. Penal Code Ann. Â§ 22.06 (West 2007). 

Â Â Â Â Â Â Â Â Â Â Â  Â On a timely request, a defendant has the right
to an instruction on any defensive issue raised by the evidence, whether such
evidence is strong or weak, unimpeached or
contradicted, regardless of what the trial court may or may not think about the
credibility of this evidence. See Hamel v. State, 916
S.W.2d 491, 493 (Tex.Crim.App. 1996); Miller v.
State, 815 S.W.2d 582, 585 (Tex.Crim.App. 1991)
(op. on reh'g). When evidence from any source
raises a defensive issue, and the defendant properly requests a jury charge on
that issue, the trial court must submit the issue to the jury. See Muniz v.
State, 851 S.W.2d 238, 254 (Tex.Crim.App. 1993), cert.
denied, 510 U.S. 837, 126 L. Ed. 2d 82, 114 S. Ct. 116 (1993). Thus, if the
issue is raised by any party, refusal to submit the requested instruction is an
abuse of discretion. Id. Â When the
evidence fails, however, to raise a defensive issue, the trial court commits no
error in refusing a requested instruction. Id. 

Under the Penal Code, it is a defense
to the offense of simple assault that the victim effectively consented to the
offender's assaultive conduct or that the offender reasonably believed that the
victim consented, at least so long as the conduct did not threaten or inflict
serious bodily injury. Tex. Penal Code Ann. '
22.06 (West 2007); Allen v. State, 253 S.W.3d 260, 261 (Tex.Crim.App. 2008).Â 
The Texas Penal Code defines "consent" as "assent in
fact, whether express or apparent." Tex. Penal Code Ann. ' 1.07(a)(11)
(West 2003). Thus, the issue is whether there was any evidence, viewed in the
light most favorable to appellant, to show (1) Wendi effectively consented to
the assault, i.e., whether there was any evidence that she assented in fact,
either expressly or impliedly, or (2) appellant reasonably believed Wendi
effectively consented.Â  See Bufkin v.
State, 179 S.W.3d 166, 173 (Tex.App.ÂHouston [14th
Dist.] 2005), affÂd 2006 Tex.Crim.App.
LEXIS 2111 (Tex.Crim.App.
Nov. 1, 2006).

Appellant contends consent can be
implied from Wendi=s testimony that when she entered the
bedroom after their argument to look for cigarettes, appellant grabbed her arm
and she slapped him in the face.Â  She
then left the room but later returned to find the door closed and
barricaded.Â  She tried to force her way
into the room and appellant slammed the door on her leg before she was able to
move it out of the way.Â  Shortly
thereafter, appellant attempted to leave the house and Wendi came up behind him.Â  He pushed her into a wall.Â  Appellant argues the issue of consent to
mutual combat was raised by WendiÂs testimony because it shows Wendi was the
instigator of the confrontations.

The State disagrees, noting that
Wendi did not dare, entice, or induce appellant to assault her. See,
e.g.,Â  Allen, 253 S.W.3d at 267Â  (evidence of the victim=s words such as Ago ahead,@ Acome on,@ Aslap me,@ and Ado it@ could be sufficient to raise
evidence of consent); Pierce v. State, No. 04-02-00749-CR, 2003 Tex.App. LEXIS 9799, at *13 (Tex.App.BSan Antonio Nov. 19, 2003, pet. ref=d) (mem. op., not designated for
publication) (victim testified she had been Aegging him on@ right before he pushed her off the bed but, under the
circumstances, the statement was no more than a Asmartâalec@ remark and was not consent). 

In Pierce, the court concluded that the victimÂs statement of Âgo
aheadÂ before defendant struck her was no more than a Âsmart-alecÂ remark and was not consent. Pierce, No. 04-02-00749-CR, 2003 Tex.App. LEXIS 9799, at *13.Â  The court further noted that even viewed in
the light most favorable to the defense, the statement shows that the alleged
consent occurred only after the assaultive conduct had begun and the victim
thus could not have consented to being hit, choked, grabbed, scratched or
knocked down. Â Id. Â The rationale of Pierce is applicable here.Â  The testimony to which appellant points shows Wendi slapped him
only after appellant grabbed Wendi=s arm.Â  Her action cannot be seen as giving implied
consent to his physical actions of slamming her leg in the door or pushing her
into a wall. Id. at
*13; Tex. Penal Code Ann. ''
1.07(19), 22.06 (West 2003).Â  See Allen, 253 S.W.3d at 268 (noting Â[c]ommon experience tells us
that such apparent bravado (Âgo ahead,Â Âcome on,Â Âslap me,Â Âdo itÂ) in the
face of an expressed threat does not normally communicate a genuine desire to
be assaulted; it far more likely constitutes a backhanded warning of
potentially dire consequences to the threatener
should she actually carry out her threatÂ).Â  Neither of WendiÂs other two actions,
attempting to enter their shared bedroom and coming up behind appellant as he
was leaving their apartment, provide evidence she consented to his assaultive
conduct. Moreover, appellant did not testify and offered no evidence,
testimonial or otherwise, that he formed a reasonable belief that Wendi
consented to being hit. Pierce,
No. 04-02-00749-CR, 2003 Tex.App. LEXIS 9799, at *13; Tex. Penal Code Ann. Â§ 22.06 (West 2007).Â  Having reviewed the entire record, we find
the circumstances described in the record would not lead an ordinary and
prudent man to a reasonable belief[3]
his wife effectively was consenting to his slamming a door on her leg or
pushing her into a wall.Â  

Because the evidence failed to raise
the defense of consent, the trial court did not commit error in refusing the
requested instruction on consent. Granger v. State, 3
S.W.3d 36, 38 (Tex.Crim.App. 1999). We
overrule appellant=s second issue.

Sufficiency of the Evidence

In appellantÂs last issue, he challenges the
factual sufficiency of the evidence to support his conviction.Â  Since appellantÂs brief was
filed, however, the Court of Criminal Appeals decided Brooks v. State, 323 S.W.3d 893, 2010 Tex.Crim.App.
LEXIS 1240 (Tex.Crim.App. 2010).Â  In that case, the court determined the
sufficiency of the evidence should be reviewed only under the standard set
forth in Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560
(1979).Â  We will therefore review the
evidence in a light most favorable to the verdict for appellantÂs sufficiency
claim.[4]

Â Â Â Â Â Â Â Â Â Â Â  The legal sufficiency standard
mandates that an appellate court defer to the factfinder's
credibility and weight determinations. Brooks, 323 S.W.3d 893, 2010 Tex. Crim.
App. LEXIS 1240, at *8.
After giving proper deference to the factfinder's
role, we will uphold the verdict unless a rational factfinder
must have had reasonable doubt as to any essential element. Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim.
App. 2009).

A person commits assault if the
person intentionally, knowingly or recklessly causes bodily injury to another,
including the person's spouse. See Tex. Penal Code Ann. ' 22.01(a)(1)
(West 2003). Therefore, the State was required to prove appellant intentionally,
knowingly or recklessly caused bodily injury to Wendi.Â  We note appellant does not challenge the
evidence supporting these elements but instead reiterates his
consent or mutual combat argument.[5]Â  Although we have already discussed and
rejected appellantÂs consent argument, we nevertheless will briefly address the evidence supporting each
element of the offense in our sufficiency review.

First, the State had to prove
appellant was the person who committed the assault.Â  Wendi identified appellant as the person who
assaulted her. Appellant did not deny that he was the person who committed the
assaultive actions.Â  Appellant
acknowledges he and Wendi were husband and wife, members of the same household.Â  See Tex. Fam. Code Ann. Â§ 71.005 (West
2009) (Ahousehold@ means a unit composed of persons
living together in the same dwelling without regard to whether they are related
to each other).

Next, the State had to prove
appellant caused Wendi bodily injury.Â  ABodily injury@ means physical pain, illness, or any
impairment of physical condition. Â See Tex. Penal Code Ann. ' 1.07(8) (West 2003). Wendi testified
at trial appellant slammed the door on her Areally hard@ and part of her knee was Asmashed in the door.@ She also testified that appellant
pushed her into the wall with two hands, causing both of her arms to go Aflying.@Â 
Her arm hit the doorway to their bedroom and her back hit the closet
door.Â  She agreed that this hurt.Â  The officer who responded on the day of the
incident testified that when he made contact with Wendi, A[s]he was crying.Â  You could tell she was in pain,
and she
was very scared.@ Photographs were admitted at trial
showing a bruise on Wendi=s arm and knee. Wendi testified that she went to the
doctor because her arm was hurting and was prescribed pain relievers and anti-inflammatories. She testified she returned to the doctor
the following day because she still was not feeling well physically.Â  This evidence is sufficient to support the
Âbodily injuryÂ element of the assault offense.








Last, the State had to prove
appellant intentionally, knowingly, or recklessly caused bodily injury to
Wendi.Â  Because section
22.01 authorizes three culpable mental states disjunctively, proof of any one
of the three is sufficient to support a conviction.Â  Perez v. State, 704
S.W.2d 499, 501 (Tex.App.BCorpus
Christi 1986, no pet.).Â 
A person acts intentionally
with respect to a result of his conduct when it is his conscious objective or
desire to cause the result.Â  Tex. Penal Code Ann. Â§ 6.03(a) (West 2003). A person acts knowingly
with respect to a result of his conduct when he is aware that it is reasonably
certain to cause the result. Id. Â§ 6.03(b). A
person acts recklessly with
respect to a result of his conduct when he is aware of, but consciously
disregards, a substantial and unjustifiable risk that the result will occur. Id. Â§ 6.03(c). Intent may be inferred from circumstantial evidence such as
acts, words, and the conduct of the appellant, as well as circumstances
surrounding the offense.Â  Morris v. State, 07-08-0119-CR, 2009 LEXIS 5198, *3-4 (Tex.App.BAmarillo July 7, 2009, no pet.) (mem. op.,
not designated for publication), citing Guevara v. State, 152 S.W.3d 45,
50 (Tex.Crim.App. 2004). 

Â 

Wendi testified appellant
intentionally caused her injuries. Â The record shows sufficient evidence from
which the jury could have inferred appellant at least knowingly caused Wendi
bodily injury when he grabbed her arm and, at the very least, recklessly caused
bodily injury when he slammed the door with Wendi=s leg still in it and pushed Wendi
into a wall.[6]

As sole judge of the credibility of
the witnesses and the weight to be given to their testimony, the jury chose, as
they were entitled to do, to believe Wendi's version of events. See Tex. Code Crim. Proc. Ann. art.
38.04 (West 1979 & Supp. 2009); Vasquez v. State, 67 S.W.3d 229, 236
(Tex.Crim.App. 2002).Â 
Applying the appropriate standard of review set forth in Brooks, we find the evidence sufficient
to support the jury's verdict.Â  We
overrule appellant=s last issue and affirm the judgment of the trial court.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  James
T. Campbell

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Do not publish.

Â 

Â 











[1]Â 
See Tex. Penal Code Ann. Â§ 22.01(a)(1)
(West 2003).





[2] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).





[3] See Tex. Penal Code Ann. Â§
1.07(a)(42) (West 2003) (reasonable belief Ameans a belief that would be held by
an ordinary and prudent man in the same circumstances as the actor@).Â 






[4]
The previously-applied
factual sufficiency standard considers whether the evidence supporting guilt,
though legally sufficient, is so weak that the jury's verdict seems clearly
wrong and manifestly unjust, or evidence contrary to the verdict is such that the
jury's verdict is against the great weight and preponderance of the evidence. Grotti v. State, 273 S.W.3d
273, 283 (Tex.Crim.App. 2008); Watson v. State, 204 S.W.3d 404, 414-15 (Tex.Crim.App.
2006). Under that standard, the ultimate question is whether,
considering all the evidence in a neutral light, the jury was rationally
justified in finding guilt beyond a reasonable doubt. Grotti, 273
S.W.3d at 283. Even had we applied such a standard to review of the
evidence, we could not sustain appellant's contention. From our review of the
entire record, the finding of appellant's assaultive conduct was neither clearly wrong and manifestly unjust nor against the
great weight and preponderance of the evidence.

Â 





[5]
Appellant insists that Wendi, by slapping him in the
face, indicated her desire to enter into a violent and aggressive encounter and
consented to appellant=s assaultive
conduct, rendering the evidence insufficient to support his conviction.Â  





[6]
Again, we note
appellant does not dispute that he intentionally, knowingly,
or recklessly took physical action against Wendi.Â  He argues only that Wendi=s actions manifested
implied consent to his conduct and that a person who slaps another should
expect a physical reaction.Â