NO. 07-08-0419-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JUNE 16, 2010

_____


SAMUEL R. MERMELLA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE


_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-414,684; HONORABLE BRADLEY S. UNDERWOOD, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Following pleas of not guilty, Appellant, Samuel R. Mermella, was convicted by a jury of two counts of sexual assault.[1] Punishment was assessed by the jury at twenty years confinement and a fine of $10,000 for each count. Upon the State's motion, the trial court ordered the periods of confinement to run consecutively. We affirm.

---

[1]Tex. Penal Code Ann. § 22.011(a)(2) (Vernon Supp. 2009).

## Factual Background

The victim was born on October 30, 1990. When she was in the seventh or eighth grade and approximately thirteen or fourteen years old, she met Appellant[2] and they engaged in sexual relations. According to the victim's testimony, she and Appellant were not dating nor otherwise romantically involved and two years passed without any involvement between them. Then by chance their paths crossed and on May 12, 2006, when the victim was fifteen years old and in the ninth grade, she ended up at Appellant's house with Appellant, his younger brother, and two of her female friends. According to the victim, when Appellant's brother and the two females walked to a nearby convenience store for food, Appellant persuaded her to engage in sexual relations.

After Appellant's brother and the two females returned from the store, one of the females left with another friend. Appellant, his brother, the victim, and her friend remained at Appellant's house. Later that night, the victim and Appellant went into his bedroom where, according to the victim, they again engaged in sexual relations during the early morning hours of May 13, 2006, before they both fell asleep.

The victim awoke to screams and yells by a young woman who had turned on the bedroom lights. The woman was Appellant's wife. Mrs. Mermella threw the victim's shoes out of the house, located a baseball bat, and with the assistance of a female friend commenced to beat the victim on her head, face, and body. When the victim was

---

[2]Appellant was born on February 23, 1985. Therefore, at this time, Appellant was either eighteen or nineteen years old.

able to get away she walked to a nearby convenience store where the attendant on duty offered her a phone and she called her mother.

When her mother arrived, police were called to the convenience store to investigate an assault. Officer Shane Bledsoe was dispatched to the convenience store while other officers were dispatched to Appellant's residence. During Officer Bledsoe's interview with the victim, she told him she had engaged in sexual relations with Appellant on that night and also two years earlier. After being questioned, she was taken to the hospital by ambulance and Officer Bledsoe proceeded to Appellant's residence.

At this point the assault investigation against Mrs. Mermella merged with a sexual assault investigation involving Appellant. According to the evidence, Officer Green administered *Miranda* warnings to Appellant.[3] Thereafter, Officer Bledsoe questioned Appellant about his having had sexual relations with the victim. At that time, Appellant gave a statement that he had engaged in sexual relations with her two years earlier, but he denied having done so on that night.

Following the investigation, Appellant was charged by indictment with one count of aggravated sexual assault, allegedly committed in 2004 when the victim was under age fourteen, and two counts of sexual assault, one alleged to have occurred on May 12, 2006, and the other on May 13, 2006, when the victim was over age fourteen. The jury convicted Appellant in count one of the lesser included offense of sexual assault, acquitted him in count two, and convicted him of sexual assault in count three. After the

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3

jury assessed a sentence of twenty years confinement and a fine of $10,000 as to each offense, this appeal followed.

## Analysis

Appellant challenges the trial court's ruling on his oral motion to suppress his statement by four issues in which he contends the evidence is "legally or factually insufficient" to show (1) his statement was voluntary, (2) he was properly warned, (3) he waived the right to remain silent and the right to counsel, and (4) his statements were obtained in compliance with article 38.22 of the Texas Code of Criminal Procedure. Although Appellant's complaints are couched as challenges to the sufficiency of the evidence and his cited authorities relate to such complaints,[4] essentially, he is challenging the trial court's denial of his motion to suppress. By his fifth issue, Appellant questions whether the trial court erred in failing to submit a jury instruction regarding the voluntariness of his statement.

## I. Motion to Suppress

### A. Standard of Review

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002); *Hudson v. State*, 247 S.W.3d 780, 783 (Tex.App.–Amarillo 2008, no pet.). Almost total deference is given to a trial court's determination of historical facts, especially when the trial court's fact findings are based on an evaluation of the credibility and demeanor of a witness. *St.*

---

[4]Sufficiency of the evidence complaints are directed toward elements of an offense. Voluntariness of a statement and subsidiary issues which flow therefrom are not elements of an offense.

*George v. State,* 237 S.W.3d 720, 725 (Tex.Crim.App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).  The same level of deference is also afforded to a trial court's ruling on application of law to fact questions or mixed questions of law and fact if the resolution of those questions also turns on an evaluation of credibility and demeanor.  *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex.Crim.App. 2006).  However, if mixed questions of law and fact do not fall within these categories, appellate courts may conduct a de novo review of the trial court's ruling. *Guzman*, 955 S.W.2d at 87.

The trial court is the sole factfinder at a suppression hearing, and it may believe or disbelieve all or any part of a witness's testimony.  *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000).  The trial court may make reasonable inferences from the evidence presented.  *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex.Crim.App. 2008).

When, as here, no findings of fact were requested nor filed, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record.  *Ross*, 32 S.W.3d at 855-56.  The trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case.  *Ramos v. State*, 245 S.W.3d 410, 418 (Tex.Crim.App. 2008).

## B.  Analysis of Issues One, Two, Three, and Four

Following voir dire but prior to the State's opening argument, the State and defense counsel conducted voir dire examination of Officer Bledsoe to determine the

5

admissibility of Appellant's statement that he had engaged in sexual relations with the victim two years before the night she was beaten. Officer Green did not testify, however, according to Officer Bledsoe, who used his police report to refresh his memory, Officer Green issued Appellant *Miranda* warnings before he was questioned about a possible sexual assault. When Appellant gave his statement, he was not under arrest or handcuffed. Although Officer Bledsoe could not recall whether he was present when Appellant was *Mirandized*, he was confident that Officer Green administered the warnings prior to questioning or it would not have been memorialized in his report. Officer Bledsoe could not, however, recall if Appellant indicated that he understood his rights or whether he affirmatively waived those rights.

Defense counsel argued that Appellant was considered a sexual assault suspect and because he was not properly *Mirandized*, his oral statement should be suppressed. The State countered that it didn't matter whether Appellant was properly *Mirandized* because Appellant's statements were not the result of a custodial interrogation. The court agreed, finding that the evidence was "uncontradicted that the defendant's *Miranda* rights were read to him."

Notwithstanding the court's position, defense counsel additionally contended that Appellant's statements were inadmissible because they were involuntary. The trial court explained that Appellant's statement did not rise to the level of "the character of a voluntary statement." The court added:

> As to the voluntariness of any confession or anything like that, I don't think we're talking about that. I think we're talking about a simple statement made to a police officer as a witness at the scene.

6

Defense counsel responded:

No, Your Honor, I'm not -- I'm not trying to make -- argue that it was involuntary or anything like that. I'm just trying to say, Your Honor, the focus of the investigation was on my client at that particular time and --

The court responded: "And he was given his *Miranda* warnings." The court overruled his objection, Appellant's statements were eventually admitted into evidence, and the court granted him a running objection to Officer Bledsoe's testimony regarding the issue.

The warnings required by *Miranda* and § 3(a)(2) of article 38.22 of the Texas Code of Criminal Procedure are intended to safeguard a person's privilege against self-incrimination during custodial interrogation. *Herrera v. State*, 241 S.W.3d 520, 525 (Tex.Crim.App. 2007). Therefore, unwarned statements obtained as a result of custodial interrogation may not be used as evidence by the State in a criminal proceeding during its case-in-chief. *Id.* at 525. It is, however, the defendant's burden to prove that a statement was the product of a custodial interrogation. *Id.* at 526.

The Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*, citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). When considering "custody" for *Miranda* purposes, the reasonable person standard is utilized, i.e., a person is in custody if, under the circumstances, a reasonable person would believe his freedom of

movement was restrained to the degree associated with a formal arrest. *Herrera*, 241 S.W.3d at 525. In that regard, at least four general pre-arrest situations have been identified as constituting custody: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex.Crim.App. 1996).

Here, Appellant was not under arrest nor was his freedom of movement restrained or otherwise restricted by law enforcement when questioned about his sexual relationship with the victim. There is nothing in the record to suggest that Appellant was in any of the situations which would constitute custody. Appellant contends he was a suspect when questioned and "*Miranda* attached." Officer Bledsoe's subjective belief about whether he was a suspect does not factor into a custody determination unless that belief was somehow conveyed to Appellant. *Herrera*, 241 S.W.3d at 525-26, citing *Stansbury v. California*, 511 U.S. 318, 323-25, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). Nothing in the record reflects that the officers conveyed to Appellant that he was a suspect in a sexual assault investigation at the time he gave his statement to Officer Bledsoe. The court found that Appellant gave a "simple statement" to a police officer "as a witness at the scene."

The trial court's ultimate "custody" determination presents a mixed question of law and fact. *Herrera*, 241S.W.3d at 526, citing *Thompson v. Keohane*, 516 U.S. 99,

8

112-13, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). Therefore, we afford almost total deference to the trial court's determination of questions of historical fact turning on credibility and demeanor. *Herrera*, 241 S.W.3d at 526.

Officer Bledsoe's testimony regarding the circumstances surrounding Appellant's statement and his being *Mirandized* were uncontradicted. During the suppression hearing, the trial court found that at the time of his statement Appellant was not in custody, his statement was not coerced, and Appellant had indeed been given his *Miranda* warnings by Officer Green. Accordingly, we conclude that § 3(a)(2) of article 38.22, was not implicated by the facts of this case. Applying the level of deference we are required to give in reviewing a suppression ruling, we conclude the trial court did not abuse its discretion in denying Appellant's motion to suppress his statement that he had engaged in sexual relations with the victim two years earlier. Issues, one, two, three, and four are overruled.

**II. Jury Instruction on Voluntariness of Appellant's Statement**

**A. Article 38.22, §§ 6 and 7**

By his fifth issue, Appellant challenges the voluntariness of his statement and whether he was properly warned of his rights and competently waived those rights. Article 38.22, § 6 provides that "[i]n all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions. Article 38.22, § 7 provides that "[w]hen the issue is raised by the evidence, the trial judge shall appropriately instruct the jury, generally, on the law

9

pertaining to such statement." Tex. Code Crim. Proc. Ann. art. 38.22, §§ 6 and 7 (Vernon 2005).

In *Oursbourn v. State*, 259 S.W.3d 159, 175-76 (Tex.Crim.App. 2008), the Court held that when the evidence *raises an issue* of the '"voluntariness" of a defendant's statement under article 38.22, the trial court shall give a general instruction under sections 6 and 7 because it is the law applicable to the case. (Emphasis added). "The issue" refers to compliance with the statutory warnings set out in both articles 15.17 and 38.22, sections 2 and 3 of the Texas Code of Criminal Procedure, and the voluntariness of the defendant's waiver of his rights.[5] *Id.*

Article 15.17 imposes a duty on an arresting officer to take an arrested person before a magistrate to provide certain warnings. Tex. Code Crim. Proc. Ann. art. 15.17(a) (Vernon Supp. 2009). Appellant was not arrested on the night in question; thus, no "issue" was raised by the evidence requiring compliance with the statutory warnings of article 15.17(a). Article 38.22, section 3 applies to oral statements of an accused made as a result of custodial interrogation. Tex. Code Crim. Proc. Ann. art. 38.22, § 3 (Vernon 2005). We have previously determined that the oral statement given by Appellant to Officer Bledsoe was not the result of custodial interrogation; thus, the requirements for admissibility enumerated in section 3(a) do not apply. Moreover, as the State points out, defense counsel's position regarding the voluntariness of Appellant's statement was, "I'm not trying to make -- argue that it was involuntary or anything like that."

---

[5]Article 38.22, section 2 applies to written statements and does not apply in this case.

Accordingly, we conclude that based on the record before us, Appellant's statement was not the result of custodial interrogation requiring compliance with certain warnings and admonitions. Thus, we need not address whether Appellant voluntarily waived his rights. We hold the trial court did not err in failing to instruct the jury on the voluntariness of Appellant's statement. Issue five is overruled.

## Conclusion

Having overruled Appellant's five issues, the trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.