

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00547-CR

FREDDY LEE KINDRED                                                      APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

After an elderly homeowner called 911 to report an attempted burglary, a Fort Worth police officer saw Appellant Freddy Lee Kindred walking nearby; his pockets bulged and he was carrying two full bags. Kindred was ultimately arrested for and convicted of burglarizing a home not far from the 911 caller's residence and sentenced to forty years' confinement. In three issues, Kindred appeals his conviction, complaining that the trial court erred by denying his

---

[1]See Tex. R. App. P. 47.4.

motion to suppress and his request for an article 38.23 instruction and by overruling his objection to the 911 caller's testimony about extraneous acts. We affirm.

## II. Suppression

In his first issue, Kindred argues that the trial court erred by denying his motion to suppress.

## A. Suppression Hearing

Fort Worth Police Officer Martin Chazaretta was the only person to testify at the suppression hearing. He stated that on May 9, 2012, at around 11:00 a.m., he received a dispatch on a residential burglary call to a home on East Mulkey Street, which he described as an older, high-crime, predominantly minority neighborhood. The homeowner told him and Officer Martinez, who arrived in a separate vehicle, that a black male in a dark-colored skull cap had tried to remove the air conditioning unit from her window.

After the two officers searched the homeowner's backyard and the surrounding area, Officer Martinez was sent on another call, and Officer Chazarreta drove down East Mulkey Street towards the Interstate 35 service road. He spotted a black male wearing a dark skull cap and carrying two large bags containing "quite a bit of items"; one of the bags was pink and the other was green. Officer Chazarreta also noticed that the man's pants pockets "were bulging with items." The man, whom Officer Chazaretta identified as Kindred, was walking on the service road around a half a block from the house on East

Mulkey Street.  Officer Chazaretta said that the skull cap was unusual because it was May and warm outside.

Officer Chazarreta did not activate his patrol car's overhead lights or do anything to get Kindred's attention other than pull up next to him, roll down the passenger-side window, and ask—from five or six feet away—"Can I talk to you?"  After Kindred assented, Officer Chazarreta told Kindred that he matched the description of a burglar, asked him what was in the bags, and asked if he could look inside the bags.  Kindred told him that he could look in the bags.  Officer Chazarreta exited his vehicle and, when he looked in the bags, saw a laptop computer, a PS3 with game controllers, a box of men's cologne, and a screwdriver.  Officer Chazaretta asked Kindred where he had obtained the items that were in the bags, and Kindred told him that he had taken them from his grandmother's house on East Mulkey Street.

Officer Chazaretta asked Kindred for his grandmother's phone number or address to verify what Kindred had told him, but Kindred told him that he did not have either.  At that point, Officer Chazaretta called for additional units and asked Kindred what he had in his pants pockets.  Instead of telling Officer Chazaretta what was in his pants pockets, Kindred pulled out a small jewelry box and handed it to him.  When Officer Chazaretta asked him what was in the box,

Kindred told him that it was a gold ring, but when the officer opened the box, he found a lapel pin with "FMI" in red letters.[2]

Officer Chazaretta offered to drive Kindred down East Mulkey so that he could speak with Kindred's grandmother, and he asked Kindred to sit in the back seat of the patrol vehicle. Investigating the laptop led to the discovery that a house behind the original complainant's house had been burglarized; when those homeowners identified some of the items of property in Kindred's possession and said that they had not given him permission to enter their house and take the items, Officer Chazaretta arrested Kindred for burglary.[3]

At the conclusion of Officer Chazeretta's testimony, the prosecutor argued that Kindred and the officer had had a consensual encounter until Kindred's responses, along with the other facts and circumstances, triggered reasonable suspicion to detain him. Kindred replied that it was not a consensual encounter, that he was stopped and detained prior to sufficient evidence to support

---

[2]During his direct examination, Officer Chazerreta testified that when he saw the laptop, gaming device, and cologne, he felt that he had reasonable suspicion to detain Kindred for further investigation. However, during cross-examination, he stated that he believed he had reasonable suspicion based on the burglar's description, the items Kindred had on him, the fact that Kindred did not know what was in the jewelry box, and that Kindred could not give a phone number or address for his grandmother.

[3]Prior to Officer Chazaretta's testimony during trial about the bags' contents, Kindred reurged his objections made during the suppression hearing, and the trial court again overruled them.

4

reasonable suspicion, and that all of the evidence should therefore be suppressed.

## B. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor, such as whether a given set of historical facts amounts to a consensual encounter or a detention under the Fourth Amendment. *See Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *see also Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013) (citing *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)).

## C. Consensual Encounter

Kindred contends that once Officer Chazaretta told him that he matched the description of a burglary suspect and wanted to look in the bags, the encounter was no longer consensual because a reasonable person would no longer have felt free to leave. He also argues that Officer Chazaretta lacked justification at the inception of his detention because the only reason articulated

5

by Officer Chazaretta for the stop was that Kindred matched the description that he had been given of a burglar in the neighborhood.

Courts recognize three distinct types of interactions between police and citizens: (1) consensual encounters, which require no objective justification; (2) investigatory detentions, which require reasonable suspicion; and (3) arrests, which require probable cause. *See Johnson,* 414 S.W.3d at 191; *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011). As explained by the court of criminal appeals in *Woodard*,

> Consensual police-citizen encounters do not implicate Fourth Amendment protections. Law enforcement is free to stop and question a fellow citizen; no justification is required for an officer to request information from a citizen. And citizens may, at will, terminate consensual encounters. Even when the officer did not communicate to the citizen that the request for information may be ignored, the citizen's acquiescence to an official's request does not cause the encounter to lose its consensual nature. Courts consider the totality of the circumstances surrounding the interaction to determine whether a reasonable person in the defendant's shoes would have felt free to ignore the request or terminate the interaction. If it was an option to ignore the request or terminate the interaction, then a Fourth Amendment seizure has not occurred.

341 S.W.3d at 411 (citations omitted).

Among all the circumstances of the encounter, "the officer's conduct is the most important factor when deciding whether an interaction was consensual or a Fourth Amendment seizure." *Id.* While no bright-line rule governs when a consensual encounter becomes a seizure, factors suggesting that police conduct implicates a Fourth Amendment seizure include the presence of several officers, the use of sirens or flashers, tone of voice or words indicating that compliance is

6

necessary, display of weapons, use of a police car to block the defendant's movement, touching the defendant physically, and retention of identification documents. *Michigan v. Chesternut*, 486 U.S. 567, 575, 108 S. Ct. 1975, 1980 (1988); *Garcia-Cantu*, 253 S.W.3d at 243 n.35.

Taking into account the totality of the circumstances, we hold that the contact between Kindred and Officer Chazaretta was a consensual encounter. Officer Chazaretta testified that he pulled his police car beside Kindred, rolled down his passenger window, and asked from a distance of five or six feet, "Can I talk to you?" Kindred assented, and Officer Chazaretta informed him that he matched the description of a possible burglary suspect and asked him what was in the bags and if he could take a look inside. He did not exit his vehicle until Kindred agreed to the request.

The record does not reveal any other factors indicative of a detention implicating Fourth Amendment protections, such as "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554–55, 100 S. Ct. 1870, 1877 (1980). Instead, the record reflects that Officer Chazaretta was the only officer present at the initial contact, did not turn on his lights or siren, did not block Kindred's movement or order him to stop, did not display his weapon, and was conversational, not commanding. *See Chesternut*, 486 U.S. at 575, 108 S. Ct. at 1980 (holding no

7

seizure occurred when officer accelerated and briefly drove alongside defendant). *But cf. Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010) (holding detention occurred when officer shined patrol car lights in defendant's direction and said, in manner that sounded like an order, "[C]ome over here and talk to me"); *Garcia-Cantu*, 253 S.W.3d at 245–49 (holding detention occurred when officer blocked defendant's exit with his patrol car and used "authoritative, commanding voice and demeanor that brooked no disagreement"); *Hudson v. State*, 247 S.W.3d 780, 785–86 (Tex. App.—Amarillo 2008, no pet.) (holding that activation of patrol car lights caused pedestrian to yield to officer's show of authority). Without such evidence of coercive police conduct, an "otherwise offensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Woodard*, 341 S.W.3d at 413 (citing *Mendenhall*, 446 U.S. at 555, 100 S. Ct. at 1877). Further, the test is whether a reasonable person, not a timid person, would feel free to terminate the encounter, *see State v. Velasquez*, 994 S.W.2d 676, 679 (Tex. Crim. App. 1999), and feelings of discomfort, embarrassment, and inconvenience do not, standing alone, amount to official coercion or seizure of a person. *See Woodard*, 341 S.W.3d at 413; *Garcia-Cantu*, 253 S.W.3d at 243; *Velasquez*, 994 S.W.2d at 679.

Taking into account the totality of the circumstances surrounding this event, we conclude that the contact between Kindred and Officer Chazaretta was a consensual encounter until Officer Chazaretta searched the bags and

8

developed reasonable suspicion to detain Kindred. *See Johnson*, 414 S.W.3d at 191; *Woodard*, 341 S.W.3d at 413; *see also Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991) (stating that so long as the encounter is consensual in nature, no reasonable suspicion is required). Accordingly, we overrule Kindred's first issue.

### III. Extraneous Offense Evidence

In his second issue, Kindred complains that the trial court abused its discretion by allowing the homeowner who called 911 to testify about extraneous acts that were highly prejudicial and only slightly probative because he was not charged with burglarizing her home. He argues that her testimony was only offered to show why the police were searching the area and that the officers' reason for the search could have been given "without getting into the details."

A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling. *See Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 905 (2011); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (stating that improper admission of evidence is harmless when other such evidence is admitted without objection). This rule applies whether the other evidence was introduced by the defendant or the State. *Leday*, 983 S.W.2d at 718.

Here, before the homeowner testified that she had seen a black male wearing a black stocking cap enter her bedroom through the window, Kindred

asked for a running objection to testimony about this extraneous offense based on rules of evidence 401, 404(b), and 403. The trial court overruled his objection.

Following the homeowner's testimony, Officer Chazaretta testified that he had spoken with the homeowner when he responded to the 911 call and that she described the attempted burglar as a black male wearing a black stocking or skull cap. Officer Heckart also testified that he and other officers responded to the area after the homeowner "had called in that somebody had crawled through her back window." Although Kindred had requested a running objection during the homeowner's testimony, he did not object to the two officers' testimonies, which contained information nearly identical to that delivered through the homeowner's testimony. *See Ford v. State*, 919 S.W.2d 107, 113 (Tex. Crim. App. 1996) (stating that a running objection is not appropriate to preserve error across different witnesses); *see also Estrada*, 313 S.W.3d at 302 n.29 (noting that "any preserved error in the admission of State's Exhibit 74 was harmless in light of the proper admission into evidence of very similar State's Exhibits 73 and 75").

Accordingly, even if the trial court erred by admitting the homeowner's testimony, such error was harmless in light of Kindred's failure to object to the substantially similar testimony of Officers Chazaretta and Heckart. *See Estrada*, 313 S.W.3d at 302 n.29; *Leday*, 983 S.W.2d at 718. Therefore, we overrule Kindred's second issue.

10

## IV. Article 38.23 Instruction

In his third issue, Kindred argues that the trial court erred by not including an article 38.23(a) instruction on the suppression of evidence.

Code of criminal procedure article 38.23(a) prohibits the admission of evidence against an accused in a criminal trial if the evidence was obtained in violation of state or federal constitutions or laws. Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005). The statute further provides:

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

*Id.* A defendant's right to the submission of jury instructions under article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). To be entitled to an article 38.23(a) instruction, the defendant must show that (1) an issue of historical fact was raised before the jury, (2) the fact was contested by affirmative evidence at trial, and (3) the fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular evidence inadmissible. *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012).

The only alleged factual dispute Kindred points to in the record concerns whether Officer Chazaretta testified that he saw Kindred "coming from the alley"

11

or "coming from the *direction* of the alley." On direct examination, Officer Chazaretta testified, "It appeared to me he came from the alley on East Mulkey." On cross-examination, Kindred attempted to create a contradiction during the following exchange:

Q. So you think he's coming from the direction of the alley?

A. That's correct. It appeared to me.

Q. But a moment ago you testified it appeared he was coming from the alley; is that right?

A. Yes.

Q. So do you need to change your testimony to say that he appeared to be coming from the direction of the alley; is that a fair change?

A. I'm sorry?

Q. Okay. A moment ago you testified that he appeared to be coming from the alley. Do you recall that?

A. Yes.

Q. And now you're telling us that what you mean is he appeared to be coming from the direction of the alley?

A. It appeared to me he was coming from the direction of the alley, yes.

Q. So if you said a moment ago that he appeared to be coming from the alley, do you need to change your testimony to say he appeared to be coming from the direction of the alley?

A. No.

Q. So in your opinion, coming from the direction of a street is just the – is satisfaction to you that he is coming out of that alley?

12

A. I didn't say I observed him coming from the alley. I said it appeared to me he was coming from the alley, from the direction of the alley.

Q. This is my last question, and we'll move on. So you now deny that you testified a moment ago that he appeared to be coming from the alley? Do you deny saying that?

A. I stated it appeared to me he was coming from the direction of the alley.

Although Kindred argues that the testimony above reveals a "highly contested issue" in the record, we find that this testimony does not create a disputed issue of fact under the most liberal of readings. *See Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004) (explaining that mere insinuations by appellant's attorney that no inventory slip was made, in light of testimony by officers that such a slip did indeed exist, did not raise a fact issue as to the existence of the inventory slip). Further, Officer Chazaretta repeatedly asserted that his original testimony was an accurate representation of what he had observed, and nothing in the record affirmatively contested his version of events. *See Robinson*, 377 S.W.3d at 719 (holding that the disputed fact must be affirmatively contested for appellant to be entitled to an article 38.23 instruction). Furthermore, whether Officer Chazaretta saw Kindred "coming from the alley" or "coming from the *direction* of the alley" would not be considered a fact material to determining whether his initial interaction with Kindred was consensual. *See Madden*, 242 S.W.3d at 509–10.

13

Having determined that the record does not contain a disputed issue of fact that is material to Kindred's claim, we hold that the trial court did not err by denying Kindred's request for an article 38.23 instruction. Therefore, we overrule Kindred's third issue.

## V. Conclusion

Having overruled all of Kindred's issues, we affirm the trial court's judgment.

PER CURIAM

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 22, 2014

14