

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00054-CR

AMBER RODGERS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Criminal Court No. 5
Denton County, Texas
Trial Court No. CR-2013-02785-B, Honorable Richard Podgorski, Presiding

July 22, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Amber Rodgers, entered a plea of *nolo contendere* to the charge of possession of a usable quantity of marijuana in an amount of two ounces or less.[1] Pursuant to a plea bargain, appellant was placed on deferred adjudication community supervision for 12 months and ordered to pay a fine of $300. Prior to entry of the plea bargain, appellant filed a motion to suppress any evidence obtained as the result of her

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b) (West 2010).

initial detention. The trial court overruled the motion and subsequently certified appellant's right to appeal.[2] We will affirm.

## Factual and Procedural Background

On March 9, 2013, at 2:00 a.m., Officer Ashley Simmons of the Carrollton Police Department was on patrol when she observed a white Honda Civic with its lights on parked in the parking lot that was shared by several businesses. The businesses appeared to be closed. Simmons observed a female, who subsequently turned out to be appellant, in the vehicle slumped over the steering wheel. Simmons turned her police vehicle into the parking lot to conduct a welfare check on the woman in the vehicle. Simmons approached appellant's vehicle at a slight angle several feet behind it. Before Simmons could exit her vehicle to check on appellant, appellant's vehicle began backing toward Simmons. Simmons turned her emergency lights on to get appellant's attention and to prevent her from backing into the police vehicle. Appellant stopped her car and Simmons went to the driver's side door to check on appellant. Simmons testified that she pulled in behind appellant's vehicle to check on appellant's condition and make sure there was no medical emergency. After making contact with appellant, Simmons determined that there was no medical emergency but concluded there was reason to detain appellant for driving while intoxicated.[3]

Appellant was subsequently charged by complaint and information with possession of a usable quantity of marijuana in an amount of two ounces or less.

---

[2] *See* TEX. R. APP. P. 25.2(a)(2)(A).

[3] Ultimately, appellant was charged with misdemeanor possession of marijuana instead of driving while intoxicated. The arrest affidavit, filed in the Clerk's Record, indicates that the marijuana was found in appellant's purse after her detention for driving while intoxicated.

Appellant filed a motion to suppress the evidence seized, contending that there was no reasonable suspicion to detain appellant. The trial court conducted a hearing on the motion to suppress and denied it. Thereafter, the trial court filed findings of fact and conclusions of law.

Following the trial court's denial of the motion to suppress, appellant entered a plea of *nolo contendere* to the misdemeanor marijuana charge, and this appeal followed. Appellant contends in a single issue that Simmons lacked any reasonable suspicion to detain her. Accordingly, she contends that the trial court erred in overruling the motion to suppress and that we should reverse the trial court's decision. Disagreeing with appellant, we will affirm.

Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion but review the trial court's application of the law to the facts *de novo*. *Id.* In reviewing the trial court's decision, we do not engage in our own factual review; rather, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, especially when based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *See Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). Appellate courts review *de novo* "mixed questions of law and fact" that do not depend upon

3

credibility and demeanor. *Id.* If the trial court's decision is correct under any theory of law applicable to the case, it will be sustained. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003) (en banc). Additionally, the legal question whether the totality of circumstances justified the officer's actions is reviewed *de novo.* *Hudson v. State*, 247 S.W.3d 780, 784 (Tex. App.—Amarillo 2008, no pet.).

## Community Caretaking

Community caretaking is a recognized exception to the warrant requirement of the Fourth Amendment to the United States Constitution. *See Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973). The Texas Court of Criminal Appeals recognized the community caretaking exception in *Wright v. State,* 7 S.W.3d 148, 151 (Tex. Crim. App. 1999) (en banc). In *Cady,* the United States Supreme Court held that police officers may engage in community caretaking function "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady,* 413 U.S. at 441. However, the court further acknowledged that the Fourth Amendment requires only reasonableness. *See id.* at 439. Texas jurisprudence has held that "as part of his duty to serve and protect, a police officer may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe *is in need of help.*" *Gonzales v. State,* 369 S.W.3d 851, 854 (Tex. Crim. App. 2012) (quoting *Wright,* 7 S.W.3d at 151). Further, the officer's invocation of the community caretaking function must not be primarily motivated by a non-community caretaking purpose. *Id.*

In order to properly evaluate the invocation of the community caretaking function, we are directed to first engage in a two-step inquiry: "(1) whether the officer was

4

primarily motivated by a community-caretaking purpose; and (2) whether the officer's belief that the individual needs help was reasonable." *Id.* at 854-55 (citing *Corbin v. State,* 85 S.W.3d 272, 277 (Tex. Crim. App. 2002)).

If we find that an officer was primarily motivated by the community caretaking purpose, we are further required to review the reasonableness of the officer's belief that the citizen needs assistance by reviewing a four part non-exclusive list of factors. *Id.* The factors we may consider are: "(1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and (4) to what extent the individual—if not assisted—presented a danger to himself or others." *Id.* (citing *Wright,* 7 S.W.3d at 151-52).

Trial Court Findings of Fact and Conclusions of Law

We begin our analysis by reviewing the findings of fact and conclusions of law entered by the trial court following the pre-trial hearing on the motion to suppress. The trial court made the following findings of facts:

(1) Officer Ashley Simmons, a certified peace officer for the State of Texas, was driving north bound near the intersection of Frankford and Josey in the city of Carrollton, Denton County, Texas at approximately 0200 hours on March 9, 2013.

(2) Officer Simmons observed a white Honda Civic in an empty parking lot with its lights on.

(3) The car was parked near the entrance of the parking lot. There is a total of two entrances and exits to the parking lot. The businesses of that parking lot were closed.

(4) In the same area, at the intersection of Josey and Frankford, there are other businesses that were also closed. On the southwest corner of the intersection[,] there is a CVS pharmacy, a pizza place,

5

and other small businesses. On the [southeast] corner, there is another large shopping center with a Texaco, Dollar Store, and other small businesses. On the northeast corner, there is a Walgreens pharmacy. All businesses were fairly close to where the [appellant]'s vehicle was parked. All businesses were closed.

(5) As Officer Simmons drove closer to the vehicle, she noticed a female slumped over the steering wheel. Officer Simmons did not know how long the [appellant] was slumped over the wheel of the vehicle and she did not know why the [appellant] was slumped over the wheel of the vehicle. There was no one else in the vehicle and no other cars in the parking lot.

(6) Officer Simmons pulled in to the lot to check on the [appellant]'s welfare. She did not know if the [appellant] was passed out, unconscious, or needed medical assistance. Her primary concern was to make sure the [appellant] was ok.

(7) When Officer Simmons stopped behind the [appellant]'s vehicle, the [appellant] placed her car in reverse and began to pull out. Officer Simmons activated her emergency lights in an attempt to gain the [appellant]'s attention. At the time that the [appellant] began reversing, Officer Simmons was still not aware if the [appellant] needed assistance, if she was unconscious while reversing, or if her foot had slipped off the brake.

(8) Officer Simmons testified that the manner in which the [appellant] reversed was unsafe because the [appellant]'s vehicle would have collided with Officer Simmons'[s] patrol car had she continued backing out. The [appellant] violated [T]ransportation [C]ode 545.415 and 547.004. Even though the violations occurred after Officer Simmons pulled in behind the [appellant], Officer's (sic) Simmons was primarily concerned with the [appellant]'s welfare.

(9) The [appellant] responded to Officer Simmons'[s] lights by bringing her vehicle to a stop.

(10) Officer Simmons testified that when she activated her emergency lights, the Defendant was being detained for a welfare check.

(11) Officer Simmons made contact with the [appellant] and asked if she was ok and why the [appellant] was slumped over the wheel. A DWI investigation ensued, and the [appellant] was later arrested for Driving While Intoxicated.

(12) The Court finds Officer Ashley Simmons'[s] testimony credible.

The trial court then entered conclusions of law that found that Simmons properly exercised her community caretaking function and that appellant's detention was lawful. Being mindful of the standard of review that we, the reviewing court, do not make an independent review of the facts, but, instead, defer to the trial court's findings as the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, we begin our analysis. *See St. George*, 237 S.W.3d at 725.

Analysis

In reviewing the record, it is clear that Simmons's initial reaction was to turn into the parking lot to see if appellant was okay. This supports the trial court's finding of fact that Simmons's primary motivation in detaining appellant was to perform a community caretaking function. *See Gonzales,* 369 S.W.3d at 854. Appellant contends that Simmons's primary motivation was not community caretaking because she pulled in behind appellant's vehicle and "sat for an unknown period of time." While it is true that Simmons could not say precisely how long it took her to get to appellant after she entered the parking lot and stopped her patrol car, the record does not indicate that it was more than a momentary pause caused by the necessity of Simmons having to activate her emergency lights to keep appellant from backing into her patrol car. Simmons testified that, as soon as appellant stopped backing up, she made contact with her. There is nothing in the record to demonstrate that Simmons waited to make contact with appellant. Further, the trial court found that Simmons's testimony was credible. We defer to this finding and conclude that Simmons made contact with appellant as quickly as was possible under the situation. *See Ford*, 158 S.W.3d at 493.

7

We now turn our attention to the issue of whether Simmons's belief that appellant needed help was reasonable. *See Gonzales,* 369 S.W.3d at 854-55. To assist a reviewing court in ascertaining whether the officer's belief was reasonable, we examine the four non-exclusive factors first proposed by the Texas Court of Criminal Appeals in *Wright. See* 7 S.W.3d at 151-52.

The first factor we examine is the nature and level of distress exhibited by appellant. *See Gonzales,* 369 S.W.3d at 855. The record reflects that Simmons, a certified peace officer, observed a vehicle in an empty parking lot with its lights on and the driver slumped over the steering wheel at 2:00 in the morning. Simmons testified that appellant appeared to be alone in the vehicle. These observations are the earmark of a need for assistance. The community caretaking exception is designed to be utilized by an officer so that the officer may give assistance to a member of the public in times of distress. *See Yocom v. State,* No. 02-03-00181-CR, 2004 Tex. App. LEXIS 3195, at *20 (Tex. App.—Fort Worth Apr. 8, 2004, pet. ref'd) (not designated for publication). This factor weighs in favor of the reasonableness of Simmons's decision to come to appellant's assistance. Appellant argues that Simmons's testimony only demonstrates that she observed "some unknown part of [appellant]'s body over the steering wheel for an unknown amount of time, for an unknown reason." This, according to appellant, means there was not enough distress demonstrated to necessitate a detention. Initially, we observe that Simmons did not testify that an unknown part of appellant's body was slumped over the steering wheel. Rather, she testified that appellant's upper body was slumped over the steering wheel. Appellant's contention would lead to the conclusion that an officer has no reasonable belief to instigate a community caretaking detention unless the officer already knows all operative facts. This is nonsensical given the

8

purpose of the community caretaking exception. The entire reason for the detention is to ascertain whether this member of the public needs assistance. *See Corbin,* 85 S.W.3d at 276.

The second factor, the location of the individual, likewise supports the reasonableness of Simmons's belief that appellant was in need of assistance. The record reflects that appellant's vehicle was in a deserted parking lot, surrounded by closed businesses, at 2:00 in the morning. These facts weigh in favor of the reasonableness of Simmons's belief that appellant was in need of assistance.

The third factor also weighs in favor of appellant's need for assistance. Appellant was alone in the vehicle. From Simmons's perspective, if appellant was having any type of vehicle or medical emergency, she had no assistance, other than what the officer could provide. Appellant contends that, in this day and time, Simmons should have realized that appellant had a cell phone and could call for assistance, if assistance was needed. This analysis fails because it assumes two facts. First, it assumes that appellant had a cell phone, a fact totally unknown to Simmons. Second, it assumes appellant was not in distress and able to properly seek assistance. Such an assumption would negate any use of the community caretaking function to assist a distressed citizen. If we accept appellant's propositions, there can never be a case of the proper exercise of the community caretaking function.

Finally, the extent to which appellant might pose a danger to herself or others weighs in favor of the reasonableness of Simmons's decision to invoke the community caretaking exception. All Simmons knew as she approached appellant's vehicle was that a female appeared to be slumped over the steering wheel of her car. Simmons

testified she could not tell if appellant was passed out or otherwise unconscious. While the facts later demonstrated that appellant became at least somewhat conscious, Simmons's initial observations lend credence to her belief that appellant might pose a danger to herself.

Based upon a review of the four factors enunciated in *Wright,* we find that Simmons's belief that appellant was in need of assistance was reasonable. 7 S.W.3d at 151-52. The trial court's decision to deny the motion to suppress was not an abuse of discretion. *See Turrubiate*, 399 S.W.3d at 150. Accordingly, appellant's contentions that the community caretaking exception was not properly invoked are overruled. Having decided that Simmons's detention of appellant pursuant to the community caretaking function was proper we do not need to review appellant's two additional complaints. *See* TEX. R. APP. P. 47.1.

## Conclusion

Having overruled appellant's issue regarding the community caretaking detention, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Do not publish.